**ST. AGNES HOSPITAL OF the CITY OF BALTIMORE, INC.**

v.

**Frank A. RIDDICK, Jr., M.D., etc.**

**Civ. No. HM–86–3071.**

United States District Court,
D. Maryland.

Nov. 15, 1990.

---

**5.** Subsection d to section 96 of Title 3 was repealed in 1987 after appellee rendered the ser-

John G. Kruchko, Jay R. Fries and Kathleen A. Talty, Towson, Md., for plaintiff.

Philip Jacobs and John F. King, Baltimore, Md., Douglas R. Carlson, Gary E. Dyal, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM

HERBERT F. MURRAY, Senior District Judge.

Pending before this Court is plaintiff's Motion for Order Restoring Preliminary In-

vices in question.

junction During Pendency of Appeal and defendant's opposition thereto. This Court had entered a preliminary injunction in favor of plaintiff on November 14, 1986. Upon rendering judgment in favor of defendant, this Court dissolved that injunction on September 10, 1990. 748 F.Supp. 319. On September 25, 1990, plaintiff appealed this Court's judgment to the United States Court of Appeals for the Fourth Circuit and moved this Court to restore the preliminary injunction pending appeal pursuant to Rule 62(c) of the Federal Rules of Civil Procedure.[1]

A party seeking a stay of an injunction pending appeal must meet the Fourth Circuit standard by showing the following:
(1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay.

*Long v. Robinson*, 432 F.2d 977, 979 (4th Cir.1970), *aff'd*, 436 F.2d 1116 (4th Cir. 1971). In applying the four standards, the Fourth Circuit has not specifically indicated that "balancing" should be used "[b]ut there is no reason to believe that such 'balancing' is not appropriate." *Goldstein v. Miller*, 488 F.Supp. 156, 176 (D.Md.1980), *aff'd*, 649 F.2d 863 (4th Cir.1981), *cert. denied*, 454 U.S. 828, 102 S.Ct. 121, 70 L.Ed.2d 104 (1981). This Court will address the four standards one by one and weigh those factors to determine whether an injunction is warranted.

### I.  *Likelihood of Success*

■  A party seeking a stay pending appeal must make a "strong showing" of likely success on the merits of the appeal. *Id.* at 173. However, this standard does not require the trial court to change its mind or conclude that its determination on the merits was erroneous. In *Goldstein*, Judge Kaufman explained as follows:

Rather, a stay may be appropriate in a case where the threat of irreparable injury to the applicant is immediate and substantial, the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear and the interests of the other parties and the public are not harmed substantially. This is not to say, however, that every time a case presents difficult questions of law a stay should be entered. As noted earlier, the four factors must be viewed together and the interest of the movant balanced against the interests of the other parties and the public.

*Goldstein v. Miller*, 488 F.Supp. at 173, *quoting Evans v. Buchanan*, 435 F.Supp. 832, 843–44 (D.Del.1977).

■  In the instant case, plaintiff argues that "the constitutional and civil rights issues raised by Plaintiff are not only serious legal issues but complex social concerns." (Paper No. 65 at p. 7). However, plaintiff fails to identify the specific issues it has raised on appeal. Plaintiff does contend that its First Amendment right to free exercise of religion is violated "by requiring Plaintiff to perform elective abortions in order to maintain accreditation." (Paper No. 66 at p. 8). This First Amendment concern, plaintiff argues, presents "serious and complex legal issues which are ripe for appellate review." (*Id.*). However, ACGME does not require plaintiff, St. Agnes Hospital, to perform elective abortions. Rather, the accreditation requirements specify that residents acquire clinical training in family planning either in the hospital where they are residents or in an outside facility. Moreover, St. Agnes Hospital's own directives do permit abortion, sterilization, and prescription of contraceptives for purposes other than contraception or termination of pregnancy. Thus, plaintiff could provide its residents with some training in these areas even within the hospital without sacrificing its religious beliefs. Therefore, this Court feels that

1.  Rule 62(c) provides:
    When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant

an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

plaintiff has not made an adequate showing of likelihood of success on the merits.

Notwithstanding this Court's understanding of this issue, it is possible that the Fourth Circuit would find merit to some of the issues plaintiff raises. However, in any case, the remaining three factors weigh heavily in favor of defendant and preclude this Court from reinstating an injunction pending appeal.

## II. *Irreparable Harm to Plaintiff*

Plaintiff claims that defendant's withdrawal of accreditation will "destroy St. Agnes' ability to continue to maintain a residency program in obstetrics and gynecology" because it will be "unable to retain or attract staff physicians in the obstetrics and gynecology specialty ... who are necessary to maintain the residency program." (Paper No. 65 at p. 8). However, as pointed out by defendant, plaintiff's loss of accreditation for its residency program is not irreparable as plaintiff is free to modify its program and reapply for accreditation. Furthermore, plaintiff has shown no evidence that it is unable to retain or attract staff as a result of loss of accreditation.

Plaintiff also contends that it will lose its residents if the residency program is no longer accredited. However, as noted by defendant, St. Agnes' residents can still qualify for medical licensing if St. Agnes' program is equivalent to those established by ACGME. St. Agnes may petition the Maryland Board of Medical Examiners for consideration as an "equivalent" program. In any event, a residency program in obstetrics and gynecology is not essential to operating an obstetrics and gynecology department.

Further, plaintiff claims that without an injunction, it will suffer immediate loss of First Amendment rights. However, as explained above, this Court does not understand ACGME's accreditation requirements to conflict with plaintiff's religious beliefs. Moreover, plaintiff has not shown that the loss of accreditation was based on the deficiency in family planning training. ACGME withdrew accreditation based on four deficiencies, only one of which was in family planning and has possible First Amendment implications. (Paper No. 59 at p. 24).

## III. *Substantial Harm to Defendant*

Under the standard of *Long v. Robinson,* plaintiff must also show that "the other parties will not be substantially harmed by the stay." *Long v. Robinson,* 432 F.2d at 979. Plaintiff argues that defendant will suffer no irreparable injury because the stay "will simply postpone enforcement of the regulation being challenged." (Paper No. 65 at p. 10). However, this Court believes that ACGME's interests will be substantially injured if it is again enjoined from withdrawing accreditation of a residency program that has not shown compliance with ACGME's requirements in many years. ACGME's role is to assure, for the benefit of medical students and the public, the quality of post-graduate medical education and training. If it is prevented from carrying out this function, ACGME's interests will surely be harmed. Moreover, the interests of ACGME are synonymous with the interests of the public, which also weigh in favor of denying the injunction.

## IV. *The Public Interest*

Plaintiff contends that reinstatement of the injunction will serve the public interest "by permitting the continuation of these critically needed health services." (Paper No. 65 at p. 11). While it is possible that nonaccreditation of a residency program may lead to a reduction of services provided by residents, this Court recognizes that the primary purpose of residency programs is to properly train and educate future physicians. Clearly, ensuring appropriate training of medical residents is vital to the public interest. If a residency program fails to adequately train its residents, the health of the public may be at risk. Therefore, even if the loss of accreditation does cause some harm to plaintiff, the harm to the public is far greater in allowing a deficient residency program to continue to be accredited.

**78**

## CONCLUSION

Upon consideration of the four factors set forth in *Long v. Robinson*, this Court feels that reinstatement of the injunction pending appeal would be inappropriate. Plaintiff has not met its heavy burden in seeking an injunction pending appeal. Most importantly, plaintiff has failed to show that it will be irreparably harmed and that the defendant and the public will not suffer substantial harm. Citing *Goldstein v. Miller*, plaintiff argues that a stay pending appeal must be granted when "a plaintiff is forced to discontinue operations" unless the stay is granted. (Paper No. 65 at p. 9). However, unlike the situation in *Goldstein*, plaintiff in the instant case certainly cannot claim that it will go out of business. In any case, even if plaintiff is harmed to some degree by the loss of accreditation of its residency program, the balance weighs in favor of defendant and the public. Accordingly, in the interests of public health, the motion for reinstatement of injunction pending appeal will be denied. The Court will enter a separate Order to that effect.